FIRST SAVINGS AND LOAN ASSOCIATION OF MT. VERNON, Missouri, Plaintiff–Appellant,

v.

MISSOURI STATE SAVINGS AND LOAN COMMISSION, Defendant–Respondent,

v.

GREAT SOUTHERN SAVINGS AND LOAN ASSOCIATION OF SPRINGFIELD, Missouri, Intervenor.

No. 10992.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 11, 1980.

Robert Stemmons, Mt. Vernon, for plaintiff–appellant.

John Ashcroft, Atty. Gen., Terry C. Allen, Asst. Atty. Gen., Jefferson City, for defendant–respondent.

W. Ray Daniel, B. H. Clampett, Daniel, Clampett, Rittershouse, Dalton & Chaney, Springfield, for intervenor.

HOGAN, Judge.

In this case, we are called upon to determine whether an order of the Missouri State Savings and Loan Commission permitting Great Southern Savings and Loan to establish a branch office in Aurora, Missouri, is supported by competent and substantial evidence upon the whole record. We conclude it is.

An extensive restatement of the administrative history of the appeal would serve no useful purpose. On March 30, 1976, Great Southern applied to the Director of the Division of Savings and Loan Supervision for permission to open a branch office at Aurora. The Commission's administrative procedure permits protests by institutions which might be adversely affected by the establishment of a branch office. First Savings and Loan protested and asked for a hearing. The Director held hearings and denied Great Southern's application. Great Southern appealed, and the Commission[1]

reversed the Director. First Savings and Loan then sought and obtained judicial review of the Commission's order as provided by Mo.R.Civ.P. 100. The Circuit Court of Lawrence County permitted Great Southern to intervene, and upon review of the whole record, affirmed the Commission's order. First Savings and Loan appealed. The cause is before us under the provisions of Chapter 536, RSMo 1969, as amended, Laws of Mo.1976, p. 768, and to the extent Mo.R.Civ.P. 100 (1978) superseded Chapter 536, by that rule. We are permitted to consider the Commission's record as evidence. Section 536.070(5), RSMo 1969.

Section 369.329(1), RSMo Supp. 1975 required a savings and loan association to establish the existence of three conditions before it was permitted to open a branch office or agency. These conditions were: 1) The public convenience and advantage [would] be promoted by the establishment of the proposed branch; 2) No undue injury [would] result to any properly conducted association or federal association; and 3) There [was] a reasonable probability of usefulness and success of the proposed branch office. The Commission's implementing regulation, 4 C.S.R. 260–4.030, supplements these conditions or requirements by adding a "requirement" that there be a "need" for an "agency" office, but this addition is manifestly pleonastic; 4 C.S.R. 260–4.030(1)(A), which adds the condition of "need" requires no showing not already required by § 369.329(1)(1).

Section 369.329 came into our law in 1971, but the criteria for approval are familiar enough: the language of our statute faithfully tracks that of section 5(e) of the Home Owner's Loan Act of 1933, amended and codified as 12 U.S.C.A. § 1464(e). Statutory requirements similar to ours are quite common. See, e. g., Ark.Stats. § 67–1824(3) and (4) (1979 Cum.Supp.); K.R.S. § 289.031(1)(a) and (b); T.C.A. 45–3–202(b)(1)(2) and (4) (1980 Rept.). In some respects the federal

1. The administrative transcript of the hearing before the Commission affirmatively shows that Hon. Wm. A. R. Dalton, then chairman of the Commission, disqualified himself and took no part in the Commission's hearing or decision. Mr. Dalton's firm appears here as counsel for Great Southern.

law is different from ours, but it is similar enough to make federal decisions persuasive.

Section 369.319, RSMo Supp.1975 vested the Commission with broad discretionary power to review the decisions of the Director. This court is required by Mo.R. Civ.P. 100.07(e) (1978) to defer to the Commission's exercise of its discretionary powers. In brief sketch, the record shows:

Great Southern, which was chartered in 1923, now has a home office in Springfield, Branson, West Plains and Thayer, Missouri. It appears to be financially strong and well managed; as of December 31, 1975, Great Southern had total assets in excess of $115,000,000. On the same date, Great Southern's financial statement reflected reserves in excess of $8,100,000. First Savings and Loan was chartered in 1888. At the close of business on December 31, 1975, First Savings had assets in excess of $27,500,000, reserves denominated as such in excess of $850,000 and undivided profits in excess of $1,000,000. In recent years, First has been active in branching; it has branches in Bolivar, approval for a branch at Republic and another at Aurora. First also has a mobile unit which visits Eldorado Springs, Lockwood, Sarcoxie and Kimberling City.

The Primary Service Area (PSA) includes small towns in Lawrence, Christian and Stone Counties. As of May 18, 1976, First had loans in excess of $5,200,000 and had savings of nearly $8,000,000 in the PSA; Great Southern had already penetrated the PSA when it filed its application; it had made loans in the amount of $615,715 and had accumulated savings deposits in excess of $7,900,000.

First maintained that it had more money to lend in the PSA than current loan demand required; there is, however, evidence from First's representative that its branch in Bolivar, outside the PSA, has been profitable, and that First is actively seeking loans by mobile facility in five small towns near but outside the PSA, and there is evidence that despite the existence of banks and other savings institutions in or near the PSA, First had more than doubled its assets in the 5–year period immediately preceding the Director's hearing.

Otherwise, as might be expected, the point of view taken by Great Southern was highly optimistic and that taken by First was the reverse.

■ All in all, this record, taken as a whole, demonstrates that the Commission's discretion might have been exercised either way; it might well have concluded that the PSA did not need another savings and loan institution and that to permit a large and aggressive association based in Springfield to establish a branch in Aurora might well inflict "undue injury" to First's operation in and around Aurora, and might be, to some extent, harmful to other financial institutions in the area. A contrary conclusion might have been drawn equally as readily. First has had a number of competitors in and near the PSA during the past 5 years, yet it has doubled its size, and the "need" is to a considerable extent demonstrated by the fact that Great Southern has done well in the PSA, even without a branch office. In some instances, courts have tried to point out specific reasons or factors as justifying a savings and loan commission's ruling. Our observation, based on a reasonable research, is that when the whole record permits a reasonable inference that the conditions set out in the statute have been established, we should affirm the Commission's order. *Bank v. Ozark v. Federal Home Loan Bank Board*, 402 F.Supp. 162, 167–169[10] (E.D.Ark.1975). Accordingly, the Commission's order is affirmed pursuant to Mo.R.Civ.P. 84.16(b).

BILLINGS, P. J., and PREWITT, J., concur.

MAUS, J., disqualified.